Yes, I represent Appellant Carmen Maloney or Malone. May it please... Which is it? I go by Malone, but I've heard a lot of people pronouncing Maloney. I just say Malone. All right. So let's go with Malone. At any rate, may it please the Court, First, from looking at the order from the district court overturning the jury's verdict, it's hard to believe that they overturned it. I mean, first of all, you look at they're the ones on summary judgment that said there was enough evidence to go forward, specifically on the issue of whether Mr. Malone was substantially limited in standing or walking. I mean, they said that. And then the Court says in its order that the one difference that they felt stood out between the summary judgment papers and what was introduced at trial was in summary judgment he said that after 30 minutes he needed to rest and whatnot. And at trial he didn't testify to that. But then the Court goes on later in its order and says, well, it really didn't matter even if he had testified like that. I still wouldn't have found there was enough evidence. So the Court states in its order, page 43 of the record, Mr. Malone testified that because of the pain from the surgical incisions, he had difficulty walking and standing and climbing stairs or steps. And then he goes on to say at the end of that paragraph, it is reasonable to infer from Mr. Malone's testimony that he experienced these symptoms every day from the time he returned to work on January 15th, 07, until the time he was fired on March 16th of 07. In these cases, and the Court's stated the standard, you're supposed to look at whether the person was significantly restricted in performing major life activities with that of the general population. And here the Court also states correctly the Ninth Circuit law that you don't have to show comparative or medical evidence. Here you had evidence from Ron Henderson, from Kirk Curtis, that everybody walked the lot or they used a bicycle to walk the lot, and Mr. Maloney or Mr. Malone, after the accident, I mean, after the surgery, could not do it. So, I mean, you have a basis for comparison here. Apparently, the contention is that you have to show that you can't walk ordinarily and that you have to have proof outside of the work environment to determine that this is an individual who can't perform these functions necessary for an ordinary life. Yeah. I'd like to address that point. I mean, first of all, the Court found that it can be inferred, and the Ninth Circuit's precedent says it can be inferred from, in this case, being able to walk on the job. You can infer that he or not being able to walk on the job, you can infer that in general life activities, he'd have trouble. Also, I think it's the case that counsel. It would be, let's see, Gibbons v. United Parcel Services, 528 F. 3rd, 1166. It's Ninth Circuit, 2008. And in Toyota, Toyota v. Williams, the Court there said you need to show that there was a substantial limitation in daily life activities. The big difference with that case is there you were dealing with manual tasks, and, of course, manual tasks are different in maybe daily life than they are at work. Here, I mean, if you can't walk at work, you can't walk at home. I mean, it's really that simple. So does that answer your question? Yes.  Well, you know, the evidence was not that he couldn't walk at work. The evidence that he had certain difficulties, and the difficulties were related to the requirements of the job. In other words, you know, the lot was a couple hundred yards long. He had to climb these, you know, big steps on the RVs and things like that. It seems to me the viewpoint of the district court was that, well, at least for him, it was difficult to relate that to, you know, walking as a part of, say, your daily activities outside from the job. There was really no evidence on that, is there, you know, of his ability to walk, I'll say normally, outside of the job. I agree. There was no evidence on that, but it, again, the Ninth Circuit case that I just cited said that can be inferred from being able to walk on the job and whatnot. But specifically, yes, there was no evidence presented on his ability or nonability to walk outside of the job. And is my six minutes? You've used it up. Okay. So I'll turn it over to the EEOC. Good morning, Your Honors. May it please the Court, my name is Eric Harrington. I'm here on behalf of the EEOC. If I could, let me just break down the evidence as to his limitation in walking. The evidence presented to the jury showed that an average person in the general population could walk the sales lot at which he worked. Mr. Malone walked the lot before he had surgery. Mr. Henderson walked the lot as well. And David Whitlock, the finance manager, someone who walked with a limp and had a fused leg, he testified that he also could and did walk the lot. And also Curtis, the vice president at Paul Roberts, also could walk the lot and did walk the lot. So there's a lot of evidence as to what an average person in the general population can do. And the standard is Mr. Malone only had to show that he significantly restricted as to the condition, manner, or duration that he could walk as compared to a person an average person in the general population. And as to the condition as to how he walked the lot after his surgery, he walked with pain. He testified that he realized, quote, that he shouldn't be climbing up into motorhomes and he shouldn't be walking because of the pain. Mr. Henderson, his sales team partner, testified that Mr. Malone wasn't quite able to go up and down the coaches and he took on all the walking duties because Mr. Malone was in such pain when he walked. The duration of how he walked the lot, he would only walk for short periods of time. By the end of the day, he testified that he was fatigued. He testified that he was, his quote is, I couldn't walk, unquote. That's what's in the record. That's an ER-2 at 186. And then finally, as to the duration, the other condition is he used a golf cart to get around the lot. He stopped walking the lot altogether and would just use a golf cart. And there's basically a case that's on all fours here, the First Circuit case in Australis, where there was evidence that a person in the condominium complex either walked with pain, limited how much she walked, or used a cart to get around the cart. And the First Circuit said even the most cursory scrutiny of that case would suggest that that person has limited the major life activity of walking. So let me then take the issue of whether the fact that there wasn't evidence about him doing this at home and all of his walking evidence was at work. The issue in Toyota was whether manual tasks at work, those manual tasks were rubbing down cars with oil and other kinds of manual tasks at work, was the same thing as washing your hair, brushing your teeth, washing yourself. And the Supreme Court said that you couldn't necessarily do those one-to-one. But it's important for this Court to remember, in Toyota, the posture of that case was the Sixth Circuit had granted summary judgment to the plaintiff in fate on the disability question. So the Supreme Court was reviewing whether the only conclusion was whether you could be disabled. And they reversed on that and remanded for a fact finder to decide. Here we have a fact finder who looked at this evidence and determined that, in fact, there was sufficient evidence to support a finding that Mr. Malone was substantially limited in walking. The district court, I think here, the fact that it was weighing evidence is portrayed by other facts that the commission wants to point out. The first was that the district court said we – it can conclude that Mr. Malone was not substantially limited in walking because he was working. And this is – this creates a terrible Catch-22, one that's already been rejected by the Fifth Circuit and by the First Circuit. And that is you can't look at evidence that someone is working to conclude that they're not substantially limited in the nature of life activity. Why? Because it would set up the ADA plaintiff in an incredible Catch-22. If he's working, he can't prove he's disabled. If he's disabled, that means he can't work. The purpose of the ADA is to provide accommodations and work opportunities for people who may be substantially limited in major life activities but could otherwise perform the essential functions of the job with an accommodation. The district court also erred on this prong, and I suspect that counsel will talk about this, on the – on the factor of whether the impairment – the long-term impact of the impairment. And the first thing I think is really important to note is that Mr. Malone is under no obligation to provide any evidence as to that prong. That's an extra factor to be considered. The whole purpose of that prong was to carve out truly temporary conditions, like a broken leg or a flu. That's what the regulations say. It is not – was not designed to create a new – an additional hurdle for an ADA plaintiff. And this Court in the Mostafa case recognized that. In a case that was – the record was silent as to the long-term or permanent impact of the impairment. It said you can't grant summary judgment, which would be the same standard review that's in this case. But even with that being said, there is a lot of evidence in the record as to the long-term and permanent nature of this impairment. This was terminal – this is terminal cancer. There's few impairments that are more permanent, long-term, or have a greater impact on someone. The other point that's important to note is that you should – the Court should have assessed the long-term nature of the impairment at the time of the adverse employment action. So Mr. Malone was fired on March 16th. It was – the impairment was expected to be long-term at that time, and we – and Mr. Malone came back to work and said, I need to go out on new surgery, and they fired him the next day. It's reasonable to infer from that that the very reason why Paul Everts fired him was because they expected it to continue to be a limitation. An ADA employer should not get a windfall if it did turn out to be short-term in nature, if they're firing him on the basis that they expect it to be continuing to be limited. I think that's it. Unless the Court – so just in summary, there's more than enough evidence for this jury to conclude that he was substantially limited in walking. The fact that all the walking evidence was at work is of no import. You can infer that you're not able to work at home – walk at home based on evidence that you can't walk at work. And the – The case that comes to my mind that is – that's on all forces, the case of the Seventh Circuit EEOC v. Sears, and just to give you the facts of that walking case, there was evidence that the plaintiff couldn't walk through – she wanted to walk through a shortcut at the department store, and the longer route would have fatigued her. That was the entire record evidence on walking, and the Seventh Circuit reversed the summary judgment grant. It didn't discuss specifically whether you can infer at home, but I – I think we can – that's – that's what they were doing, and they weren't – they weren't held up on this – on the Toyota question of whether he could walk at home or not. Did she work at the department store? She worked at the – exactly. She was an employee of Sears. And that was the entire evidence about her limitation of walking. I guess the Estrella case – well, you know what? I do have – there's one other case that I think is on point here, too. The P.J. Torr v. Martin case. Very similar facts in this regard as well. In that case, within this Court and the Supreme Court, Mr. Martin was a P.J. golfer. He could walk the golf car – or the golf course. That's our case. What's that? That's the Ninth Circuit case. It was the Ninth Circuit case, and then – right. And then the Supreme Court also took that case. And he could walk. He could walk. He could only walk it with – in pain, though, and it would lead to all kinds of problems after he walked the golf course. And he requested to use a golf cart, and everyone in that case acknowledged that he was disabled under the ADA. I will be frank with the Court. It was not before – that specific question of disability was not before the Court, but everyone, including in Justice Stevens's opinion, they all said, of course, this guy was disabled under the Act. So I think that case is on all fours as well. Thank you. Thank you, Your Honors. Good morning. May it please the Court. My name is Munray English, and I represent Paul Everett, R.V. There's a narrow issue for the Court to decide today, and that issue is whether there was sufficient evidence at trial to show that Mr. Malone was substantially limited in a major life activity.  You know that Mr. Malone was not a major life activity. You know the law. It's in all our briefs. We actually agree on a lot of the law. It's the evidence at trial that's at issue here. There are approximately two dozen lines of testimony related to whether Mr. Malone had a substantial limitation in terms of a major life activity. Life activities identified were walking and standing. Mr. Malone testified, I had problems walking. I had problems standing. I had difficulty urinating. I was fatigued. Sometimes it was great in the morning. In the afternoon, it was worse, and I got tired. I'm not sanitizing those statements, Your Honors. Those are actual statements that Mr. Carmen Malone testified to. That's all he said. Those were generalized statements. They're not sanitized in any way by any of the Court, and the judge identified this testimony as being very limited and vague as well. This is not to say that the quantity of testimony somehow dictates the quality, but it does show what you need to look at in terms of what the testimony was. Now, this testimony didn't happen in a vacuum. Mr. Malone was able to provide some context as well, and the context is very important here. He described his job, and the job had to do with walking five acres in Nevada in the winter months, climbing up and down motor homes. And, you know, I'm not one to say what the average job is, but walking outside on five acres going up and down in the middle of winter certainly shows that this is not your average job. Well, he lived in that climate and would be subjected to more or less the same conditions, except perhaps as to the length of the walk. So it doesn't seem that he could perform well at home. Well, and you raise a good point, Your Honor. The only testimony that Mr. Malone provides is after his surgery. And to be clear, the permanent impairment here is not cancer. If cancer was automatically a permanent impairment, we'd have a lot more cases in front of you. The permanent impairment was actually the surgery, the surgery area. And the context, you know, basically jumps to after his surgery. The evidence showed in terms of the context that he actually came back two weeks early. He came back with no restrictions. And the critical testimony that both counsels failed to bring up to you because it's hurtful to their case is that he actually testifies that this got better. That pain got better once the surgical tissue healed. And that ---- Why was he fired? He was fired. He was on the computer trying to get his California real estate license. And he had been on the computer. It was our belief all along that he had actually planned a trip to San Diego. He had already put his house up for sale in January. And he wanted to get fired. He wanted to collect the unemployment and relocate to the San Diego. And the contemporaneous nature of the real estate and ---- Was it just a coincidence that he said he had to have surgery and they fired him the next day? That's just a coincidence? I don't think it was coincidence, but I don't believe that was a decision factor that Paul Everts made. He had been there for three years. He had weathered. He had been a salesman there. And he had already had leave. They had had no issue with him taking leave. They didn't have any concerns about him taking leave. They let him take leave any time he wanted, embraced him coming back. And it was actually Paul Everts' position that his attitude had changed, and he was purposely wanting to relocate. And sales were down at that point, and they were picking the cream of the crop. What testimony about that was there? There was a lot. In fact, the brief mirrors what the trial testimony ---- We had four days of trial testimony, I believe. But yet the trial testimony about whether he was substantially limited was on page 19, like half a page of Mr. Malone's brief. The other 24 pages have to do with liability. That's what was contested here. Most importantly, I think the question ---- I was asking about you said he was fired because he was going to go to San Diego and relocate. Now, what was the testimony about that in the record? Mr. Kurt, the Vice President who's in Fresno, California with us, came up and testified that with sales being down, Mr. Malone being on the computer an excessive amount of time, and you can see that in his testimony, they were wanting to keep the cream of the crop. His attitude had diminished. It had nothing to do with any physical condition. And they had let him go. And actually the testimony was that he said, good, now I can get unemployment. So it was heavily contested in terms of the liability. But the issue, of course, is what was the evidence in terms of whether he was qualified under the ADA. And might I just, you know, finalize on what did Mr. Malone want? I think that is very important. And all the cases that the counsel has brought up, that's important to note. Those are motions for summary judgment. That's not trial testimony. They got over a motion for summary judgment because there's a declaration. And that declaration gets them to trial. We're actually talking about what was the testimony at trial. And we had the judgment as a matter of law granted because there's only a scintilla amount of evidence that stated that he was substantially limited. And there's no other better evidence, Your Honors, than to say what did Mr. Malone think that he needed as an accommodation? What did he want? He wanted five-day work week. And that was what a lot of the trial testimony was about, six days, five days. Did they not want to give him five days? But what did Mr. Malone want? He didn't want shortened hours. He didn't want a limited work space. He didn't want a shortened work week. He wanted to work five days. And not only did he want that, he asked his doctor, and that was what the evidence showed, to ask his employer that. So five days is the usual work week, and for someone with his medical impairments, it does not seem unreasonable, does it? Well, that's, I think, our position is that it wasn't substantially limiting. If it had been substantially limiting, I mean, five-day work week, that by itself, him wanting that, how does that qualify under the ADA? And it's – there's a case that is actually on point. It's not a motion for summary judgment, unlike many of these cases. And it's the Gordon v. E.L. Ham's case. It's a sister court, the 11th Circuit, I believe. Very, very similar. It's a judgment as a matter of law from the employer. And it basically, cancer diagnosis, and the employee wanted to take Friday afternoons off. Very, very similar to us. Had had some testing and had some ongoing treatment. But the physical limitation was not cancer. You can't just jump to cancer. You've got to look at what was the actual physical limitation. And the courts found as well that as a judgment as a matter of law, that there wasn't enough evidence. And I would submit, Your Honors, that in this case, the limited testimony, it just didn't get there, and it was not enough to show. And all the reasonable inferences in terms of what Mr. Malone actually wanted, the five-day work week, no medical restrictions from the doctor at all, and all that goes into the play of what really was going on here. And it wasn't that he was a qualified individual under the ADA. Thank you. Now, tell us what in the judge's opinion told us exactly. What he said was that there was not substantial evidence presented to the jury. Now, there was a lot of evidence presented about his medical condition and his capacity to be impaired in his walking. Now, wasn't there enough to sustain the jury? No, Your Honor. I don't believe so, because when you go and you address as under the case law, Baccarelli, I believe is the case, you look at the adverse, the time of the adverse employment action, and that would be at his firing. And the testimony, the one comment that Mr. Malone makes is that I got, that got better. The pain associated with my scar tissue got better. And it went away. I believe that's exactly what Judge Foley pointed out, is that it's a contemporaneous thing. He had the surgery, and it got better. Sure, he had some testimony that, you know, I had some pain and it hurt, but the bottom line is that progressed and got better. And the testimony at the end was, by the time I was fired, that was actually better. And the way you look at that is, what happened after he came back from the doctor's appointment on March 15th? He came back with no restrictions again, nothing in terms of any limited work week. He just came back and said, I need to have a surgery coming up. And it was an outpatient surgery thing, and there's no restrictions at that point either. And Mr. Malone didn't ask for any additional restrictions. He just came back and said, I'm going to be needing this coming up. So clearly Mr. Malone didn't believe that, you know, the only thing he needed was just a five-day work week, and there's no further questions. Thank you very much. Yes, just briefly. We'll give you about a minute or two. A minute or two? Yes. Okay. Yes, just hitting some of the high points. First of all, the permanent impairment was the cancer. She's saying it was the surgery or whatever, it was the cancer. And the counsel for the EEOC made it clear you look, as far as assessing permanent impairment, you look at the impairment, which is a cancer, whether that's going to be permanent. Was it cancer, limit the walking, or was it the surgery? Or is there a difference? I think both did here. I mean, you can't say that just the surgery limited the walking. The case law supports that surgical procedures for the impairment, yes, those can be substantially limited, limiting just like the impairment itself. So here I think both. But when you assess the permanency of the impairment, you're just looking at the underlying impairment, and here it's cancer, and the EEOC counsel already went over that it was permanent here. Touching on some other issues that she went over, I mean, the firing is not at issue here. The court states in its order, nothing stated herein is intended to justify defendant's conduct in firing Mr. Malone. It's just a coverage issue, whether the disability was covered under the ADA. Next, she brings up the standard for summary judgment versus what was presented as evidence. If you look at what was presented at the summary judgment stage from Mr. Malone's declaration, and then you see what was presented at trial on the issue of walking and standing, there's no comparison. There was a lot of testimony, as the record indicates, on his impairment of standing and walking. There's just no comparison. Summary judgment, there was virtually no – there was very little on it. Sotomayor, what was the evidence as to why he was fired? Well, they're saying what she is saying is some of the things they put forward, but the issue was there was a lot of – one of the main pieces of evidence was that they never even told him, when they fired him, they never even gave him a reason. It wasn't until he filed the EOC complaint that then they came up with all these reasons why he was fired. They never even gave him a reason at the point of termination, really. And, you know, they only came up with all these creative reasons once it became an issue because he filed an EOC complaint. Thank you, counsel. Okay. The case just argued will be submitted.
judges: Fletcher, Reinhardt, Tashima